**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Global Thermoforming Incorporated, <br><br> Plaintiff, <br><br> v. <br><br> Auto-Owners Insurance Company, <br><br> Defendant. | No. CV-20-01614-PHX-SMB <br><br> **ORDER** |

Pending before the Court is Defendant, Auto-Owners Insurance Co.'s ("AOI's") motion to transfer venue. (Doc. 9.) Plaintiff, Global Thermoforming Incorporated ("GTI"), opposes the transfer and responsive motions have been filed. (Docs. 10, 14.) Pursuant to LRCiv. 7.2 the Court elects to rule on this motion without oral argument. For reasons further explained below, the Court finds transfer of the case to the Eastern District of Wisconsin is merited by the interests of convenience, fairness, and justice.

**I.      FACTUAL BACKGROUND**

Plaintiff GTI is a Wisconsin corporation with its principle place of business in Tempe, Arizona. Defendant AOI is a Michigan corporation with its principle place of business in that state. The parties ongoing dispute centers around an insurance contract issued by AOI and covering property of GTI located in several different states. One of the GTI properties covered by the policy is located in Racine, Wisconsin ("the Racine property"). On or about May 25, 2019, GTI alleges a theft occurred at the Racine property.

After the theft, GTI submitted a claim to AOI seeking recovery for property lost and damaged by the theft.

GTI's policy insures three different facilities located in Arizona, Tennessee, and Wisconsin. GTI asserts the policy in question "was delivered to [GTI] at its Tempe, Arizona address (and only its Tempe, Arizona address)." (Doc. 10 at 3.) However, GTI seems not to contest AOI's assertion that the policy in question "was issued through Robins Insurance Agency, Inc. in Nashville, Tennessee." (Doc. 9 at 2.)

After GTI asserted a claim under the policy, AOI did not immediately pay out the claim. Instead AOI undertook a review of the claim and the facts surrounding the loss. This entailed multiple requests by AOI for additional documentation of GTI's loss as well as requests for certain GTI officers to be examined under oath. It was not until June of 2020, more than a year after the theft, that AOI made a payment of $141,138.00 to GTI for its claim. AOI contended this payment represented the full amount owed under the claim. GTI disagreed. GTI brought this suit against AOI in the Superior Court of Arizona in Maricopa County seeking to recover for breach of contract, and for tortious bad faith breach of the covenant of good faith and fair dealing. (Doc. 1-4 at 11-13.) AOI removed the case to federal court, (Doc. 1), and has filed a motion to transfer venue to the Eastern District of Wisconsin. (Doc. 9.)

## II. RULE OF LAW

Under 28 U.S.C. § 1404(a), this Court may transfer a case to another district when the transfer is necessary for convenience and fairness. In determining whether to transfer a case, there is a 'strong "presumption in favor of plaintiff's choice of forums'" that the Court will not lightly disturb. *Gherebi v. Bush*, 352 F.3d 1278, 1303 (9th Cir. 2003), *vacated on other grounds*, 542 U.S. 952 (2004) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). "Transfer under § 1404(a) 'should not be freely granted,'" and is not appropriate where the moving party merely seeks to "shift the inconvenience to the party resisting the transfer." *Id*. (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964); *In re Nine Mile, Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982)). The purpose of transfer is to seek "a more convenient

- 2 -
Case 2:21-cv-00027-LA    Filed 01/07/21    Page 2 of 13    Document 21

forum, 'not to a forum likely to prove equally convenient or inconvenient[.]'" *Id*. (quoting *Van Dusen*, 376 U.S at 646).

When determining whether a transfer is proper under 28 U.S.C. § 1404(a), the Court employs a two-step analysis. First, the Court determines "whether the case could have been brought" in the forum to which transfer is sought. *Park v. Dole Fresh Vegetables, Inc.*, 964 F.Supp.2d 1088, 1093 (N.D. Cal. 2013). A case "could have been brought" in the transferee forum when the forum has subject matter jurisdiction, is otherwise a proper venue, and is located where the defendant is amenable to service of process. *Kachal, Inc. v. Menzie*, 738 F.Supp. 371, 372-73 (D. Nev. 1990). Second, the Court determines whether the proposed transferee district is a more suitable choice of venue based upon the convenience of the parties, witnesses, and the interests of justice. *Park*, 964 F.Supp.2d at 1093. The Ninth Circuit has enumerated several factors the for the Court to consider when determining if convenience and the interests of justice merit transfer. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). These factors include:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id*. at 498-99. The Ninth Circuit has also stated that the presence of a forum selection clause,[1] and the "the relevant public policy of the forum state, if any" are significant factors in the analysis. *Id*. at 99.

### III. ANALYSIS

The parties agree this case "could have been brought" in the Eastern District of Wisconsin. Thus, the Court's analysis need only consider whether transfer to the Eastern District of Wisconsin is necessary for convenience and fairness. *See Jones*, 211 F.3d at

---
[1] Neither party has alleged the existence of a forum selection clause in this case.

499.

**A. The Location Where the Relevant Agreement was Negotiated and Executed**

GTI makes much of the fact that the insurance contract was delivered to its principle office in Arizona. The location where relevant agreements were negotiated and executed is one factor the Court may consider under *Jones*. 211 F.3d at 498. However, when execution and negotiation occurred across multiple states, this factor does not weigh in favor of any particular venue. *Silver Valley Partners, Ltd. Liab. Co. v. De Motte*, No. C05-5590 RBL, 2006 U.S. Dist. LEXIS 67745, *6-7 (W.D. Wash. Sep. 21, 2006). Even taking at face value GTI's assertion that the contract was executed in Arizona, it was not negotiated there. It appears that the policy was issued to GTI's insurance agent in Tennessee, and presumably only issued after AOI's review of the risks associated with GTI's properties in Wisconsin, Arizona, and Tennessee. Because the negotiation and execution did not all occur in one state, this factor does not weigh for or against transfer.

**B. The State Most Familiar with the Governing Law**

Under *Jones* a forum's familiarity with the governing law is relevant to the decision of whether to transfer a case. In determining what law governs a case, a federal court will apply the conflict of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) ("[T]he prohibition declared in *Erie R. Co. v. Tompkins*, 304 U.S. 64…extends to the field of conflict of laws."). Under Arizona's choice of law precedents, Wisconsin's substantive law applies to the present action.

GTI's first claim is for breach of an insurance contract. Arizona courts have explicitly quoted Restatement (Second) of Conflict of Laws § 193 (hereafter "Restatement") to hold that the validity of, and rights created by, an insurance contract are generally governed by the law of "the principal location of the insured risk." *Bell v. Great Am. Ins. Co.*, No. 1 CA-CV 07-0445, 2008 Ariz. App. Unpub. LEXIS 346 *6-8 (Ariz. App. July 31, 2008). The principal location of an insured risk is "in the state where [the insured property] will be during at least the major portion of the insurance period." *Beckler v. State Farm Mut. Auto. Ins. Co.*, 195 Ariz. 282, 285-87 (1999). When a policy insures property

"located in several states… courts would be inclined to treat such a case, at least with respect to most issues, as if it involved three policies, each insuring an individual risk." *Bell*, 195 Ariz. at 6-7 (quoting Restatement § 193 cmt. f.). For example if a policy "insure[d] dwelling houses located in states X, Y and Z… [and] the house located in state X were damaged…the Court would determine the rights and obligations of the parties under the policy, at least with respect to most issues, in accordance with the local law of X." *Id.*

As the state in which the insured property was located during the insurance period, Wisconsin is clearly the principle place of the insured risk. It does not matter that GTI's policy also insured property and assets located in other states. Arizona courts have noted that the proper course when confronted with a policy covering property in several states is to "treat such a case…as if it involved [multiple] policies," and apply the law of each state to whatever insured property is located within it. *Bell*, 195 Ariz. at 7. Given this statement of the Arizona courts, Wisconsin law must apply to GTI's breach of contract claim.

GTI's second cause of action is not for breach of contract, but for the tort of insurance bad faith. In Arizona "choice of law cases regarding multistate insurance bad faith claims are analyzed under Restatement §§ 6, 145 and 146," and not under Restatement § 193. *Callies v. United Heritage Prop. & Cas. Ins. Co.*, 2014 Ariz. App. Unpub. LEXIS 332 at *9 n.7 (Ariz. App. Mar. 18, 2014) (citing *Bates v. Superior Court*, 156 Ariz. 46, 48-51 (1988)). As such, "courts are to resolve tort issues [for insurance bad faith] under the law of the state having the most significant relationship to both the occurrence and the parties with respect to any particular question." *Bates*, 156 Ariz. at 49 (citing Restatement § 145).

In determining what state has the most significant relationship, a court should examine: "where the injury occurred…where the conduct causing the injury occurred…the domicile, residence, nationality, place of incorporation and place of business of the parties…[and]…where the relationship, if any, between the parties is centered." *Id.* (quoting Restatement § 145(2)). An injury occurs in "the state where…[a plaintiff] initially

suffered damage." *Callies*, at *10-11 (citing *Pounders v. Enserch E&C, Inc.*, 232 Ariz. 352, 356 (2013) ("'the place of injury' is the place…where the injury manifested")). In the context of a claim for insurance bad faith, the "conduct causing the injury" occurs in the state in which the insurer makes its decision to improperly deny, delay, or investigate a claim. *Callies*, at *15 (citing *Bates*, 156 Ariz. at 50).

Though a closer call than the breach of contract claim, the court finds that Wisconsin law also applies to Plaintiff's tort claim. Plaintiff required the funds from its denied insurance claim in order to replace and repair equipment located in its Wisconsin factory, so Wisconsin was likely the state where it initially suffered damage from the delay in payment. Wisconsin is also the state where the conduct causing the injury occurred because Defendant handled the investigation and denial of Plaintiff's claims out of its Wisconsin office. The third factor regarding the "domicile, residence, nationality, place of incorporation and place of business of the parties" is inconclusive. As Plaintiff's own complaint says, GTI is domiciled in Wisconsin and operated a factory there, though it has its principle place of business in Arizona. (Doc. 1-4 at 8.) As to the center of the parties' relationship, that factor does appear to lean with any great weight toward a single jurisdiction given the parties relationship began with a contract brokered out of Tennessee, delivered to Arizona, administered out of Wisconsin and applied property spanning all three of those states.[2]

Because Wisconsin law appears to apply to both the Plaintiff's causes of action, Wisconsin is likely more familiar with the governing law. This factor weighs in favor of

---

[2] Though only cited once, as a parenthetical, in its brief, GTI at oral argument alleged without further explanation that our choice of law analysis is controlled by A.R.S. § 20-1101. However, A.R.S. § 20-1101, titled "Scope of article," does not mandate a general choice of law rule for all insurance disputes. The statute merely states the other provisions of "*[t]his article* [(A.R.S. §§ 20-1101 — 20-1138)] shall not apply to… [p]olicies or contracts not issued for delivery in this state nor delivered in this state…" (emphasis added). Plaintiff gives no explanation of which of the forty-two statutory provisions in "[t]his article" (A.R.S. §§ 20-1101 — 20-1138) applies to its dispute. As such, the Court remains convinced that the cited Arizona state cases control resolution of its choice of law analysis.

transferring the case.

**C. The Plaintiff's Choice of Forum**

Courts generally recognize a strong presumption in favor of the Plaintiff's choice of forum. *Gherebi*, 352 F.3d at 1303; *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."). Some courts have held that additional weight is given to the plaintiff's choice when the plaintiff has selected its home forum. *Compare*, *Conte v. Ginsey Indus.*, 2012 U.S. Dist. LEXIS 105810 *7 (D. Ariz., July 30, 2012) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 at 266 (1981) (holding additional weight is granted to a plaintiff's choice of their home forum when considering *forum non conveniens*)); *with Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F.Supp. 759, 764 (D. Del. 1991) ("Where a plaintiff chooses to litigate away from its principal place of business, the quantum of inconvenience to defendant needed to tip the balance strongly in favor of transfer necessarily will be less than in the case where plaintiff's choice of forum is highly convenient to plaintiff")). A corporation's principle place of business is considered its home forum. *Bosch v. Snap-On & Drew Techs., Inc., No.* CV 11-07784 MMM (AGRx), 2012 U.S. Dist. LEXIS 199422 (C.D. Cal. Apr. 3, 2012) (citing *Cincinnati Ins. Co. v. O'Leary Paint Co., Inc.*, 676 F.Supp.2d 623, 632 (W.D. Mich. 2009); *Steifel Laboratories, Inc. v. Galderma Laboratories*, Inc., 588 F.Supp.2d 1336, 1339 (S.D. Fla. 2008); *Lycos, Inc. v. TiVo, Inc.*, 499 F.Supp.2d 685, 692 (E.D. Va. 2007). However, the Plaintiff's choice of forum will not always be controlling on the question of venue. The plaintiff's choice must be weighed against the "burden of litigating in an inconvenient forum." *Decker*, 805 F.2d at 843. Additionally, the Plaintiff's choice of forum is given less weight when the underlying case has little to no connection with the forum selected. *See generally Saleh v. Titan Corp.*, 361 F.Supp.2d 1152, 1157-58 (S.D. Cal. 2005).

GTI has selected its home forum, and as such, its choice is entitled to weight.[3] While

---

[3] AOI argues that plaintiff's choice is entitled to little weight because Arizona has little to

incorporated under the laws of Wisconsin, GTI has its principle place of business in Arizona. At least some of GTI's directors and officers live in the state of Arizona, including both of the officers AOI examined under oath. Additionally, at least some of the facts relevant to the Plaintiff's claim bear a connection to Arizona.

GTI's second claim is for breach of the covenant of good faith and fair dealing. There GTI alleges that AOI delayed, denied, and withheld insurance benefits, failed to conduct a fair investigation, and violated industry standards governing reasonable claim handling practices. (Doc. 1-4 at 13.) The allegations of undue delay, an unfair investigation process, and failure to meet industry standards are at least partially connected to Arizona. During the investigation, AOI communicated with GTI in Arizona, fielded requests and inquiries about the claims process from the GTI Arizona office, and even conducted examinations of witnesses under oath while located in Arizona. As such, it appears to the Court that Defendant is incorrect in asserting the action is "unconnected" with GTI's selected forum. While the evidence and connections in Wisconsin may outweigh the connections of Arizona, that is a question to be answered by balancing the other *Jones* factors and does not itself render plaintiff's forum "unconnected." As such the Court must resolve the factors in this case with an eye toward the great weight merited by Plaintiff's original selection.

---

no connection with the underlying action. However, most of the cases AOI cites on the point are distinguishable from the present circumstances. *See Am. Sec. Ins. Co. v. Norcold, Inc.,* No. 10-CV-954-PHX-GMS, 2010 U.S. Dist. LEXIS 91044 *1, 6 (D. Ariz. July 23, 2010) (holding a Delaware corporation's choice of an Arizona forum was not entitled to great weight when the case was unconnected with the forum); *Shanze Enterprises, Inc. v. American Cas. Co.*, No. 2:14-cv-02623-KJM-AC, 2015 U.S. Dist. LEXIS 27877, at *13-14 (E.D. Cal. Mar. 5, 2015) (noting little weight should be given to plaintiff's choice where "Shanze does not reside in this district"); *Sky Land Invs. v. Chi. Title Ins. Co.*, No. CV-07-1328-PHX-SRB, 2007 U.S. Dist. LEXIS 111569, at *9-10 (D. Ariz. Nov. 20, 2007) (holding a Nevada corporation's choice of forum was not entitled to great weight when that corporation had minimal contacts with Arizona); *Boyd v. Snyder*, 44 F. Supp. 2d 966, 970 (N.D. Ill. 1999) (finding named plaintiffs' choice of their personal home forum not entitled to weight in a prisoner class action lawsuit when most class members are incarcerated outside of their domicile).

### D. The Respective Parties' Contacts with the Forum

Another *Jones* factor considers each party's contacts with the forum. 211 F.3d at 499. Multiple courts of this circuit have interpreted this factor as a comparative analysis examining the general and case specific contacts that both parties have with either forum. *See, e.g., Porter v. Chetal*, No. 3:13-cv-00661-LRH-VPC, 2014 U.S. Dist. LEXIS 86393, at *10-11 (D. Nev. June 25, 2014) ("Because both parties have meaningful contacts with the chosen forum of Nevada, the Court finds this factor does not support transfer."); *Davis v. Soc. Serv. Coordinators*, No. 1:10-cv-02372-LJO-SKO, 2013 U.S. Dist. LEXIS 118414 (E.D. Cal. Aug. 16, 2013); *Ahead, LLC v. KASC, Inc.*, No. C13- 0187JLR, 2013 U.S. Dist. LEXIS 58303 (W.D. Wash. Apr. 23, 2013) (holding transfer appropriate where KASC had "only moderate contacts with Washington" few of which related to the claim, but "[b]y contrast, both parties have strong contacts in Massachusetts."). Case related contacts are generally given greater weight. *Silver Valley Partners, Ltd. Liab. Co. v. De Motte*, No. C05-5590 RBL, 2006 U.S. Dist. LEXIS 67745, at *9-10 (W.D. Wash. Sep. 21, 2006) (Given that both parties have case-related contacts with the District of Idaho, and only plaintiffs have case-related contacts with the Western District of Washington, the factor of the respective parties' contacts with the forum weighs in favor of transfer to the District of Idaho."). This factor examines contacts of the *actual parties* to the action, not contacts of other persons. *Patent Mgmt. Found., LLC v. Analog Devices, Inc.*, No. C 10-03630 SBA, 2011 U.S. Dist. LEXIS 7389, at *15-16 (N.D. Cal. Jan. 19, 2011) (holding the contracts of other persons associated with the litigation were of little import because "neither Mr. Thomas nor TI Law Group is a party to this action. PMF is the only party named as a plaintiff.").

On balance the parties contacts with the forums favor transfer. Plaintiff is a Wisconsin corporation; the property where Plaintiff suffered their loss at is located in Wisconsin, and Plaintiff currently remains the owner of that Wisconsin property. Additionally, Defendant's case connections with Wisconsin are greater than its connections with Arizona. Defendant issued the policy covering property in Wisconsin and

adjusted Plaintiff's claim out of their Wisconsin office. While Defendant does have moderate connections with Arizona through its contacts with the Plaintiff in that venue, on balance, the case-based connections with Wisconsin appear to be much greater.

GTI argues that both its owner and primary director reside in Arizona, but that is not relevant to the Court's inquiry. This factor considers the contacts *of the parties*. Neither GTI's director nor its owner are listed is a party to this action. While the location of relevant officers and owners certainly goes to the court's analysis regarding the cost of litigation, availability of witnesses, and general fairness and convenience of the litigation, it is not relevant as a *party* contact. *Patent Mgmt. Found., LLC*, at *15-16. Because on balance the parties' case-based contacts with Wisconsin are greater than their contacts with Arizona, this factor favors transfer.

### E. The Differences in the Cost of Litigation, Convenience of Witnesses, and Ease of Access to Proof

Other factors in determining if transfer is appropriate look to the overall costs of litigation in the selected forum, the relative ease of access to sources of proof, and the convenience of witnesses. 211 F.3d at 498-99. "The convenience of the witnesses is frequently the most important factor when determining which forum would be most appropriate." *Silver Valley Partners*, 2006 U.S. Dist. LEXIS, at *13 (quoting *Florens Container v. Cho Yang Shipping*, 245 F.Supp.2d 1086, 1092 (N.D. Cal. 2002) (citing 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3851 (2d ed. 1987)). "Here, courts look to who the witnesses are, where they are located, what their testimony will be, and why such testimony is relevant." *Florens Container*, 245 F.Supp.2d at 1092-93 (citing *A.J. Industries, Inc. v. United States Dist. Ct.*, 503 F.2d 384, 389 (9th Cir. 1974)).

It seems to the Court that these factors counsel in favor of transferring the case to Wisconsin. The parties briefing seems to indicate that the vast majority of the potential witnesses, other than two GTI officers, are located in Wisconsin. The GTI property caretaker employed at the time of the theft appears to be in Wisconsin. The equipment

damaged by the theft was, according to Plaintiff, set aside at its Wisconsin property. The AOI office which investigated and denied GTI's original claim is located in Wisconsin. Additionally, all non-party witnesses such as the police officers who investigated the theft are located in Wisconsin. It is possible that copies of some relevant communications between AOI and GTI are located in Arizona. However, it is easier to move a piece of paper than a plastics factory.

GTI admits that a vast amount of the evidence associated with the break-in is in Wisconsin, but argues the evidence is not relevant to a dispute over their proper insurance coverage. This contention assumes that AOI will not: (1) dispute any fact related to the break-in that effects policy coverage, (2) challenge the extent of damage to GTI's equipment, (3) bring any defense based on Plaintiff's failure to abide by the contract terms at the Wisconsin property, (4) call any witness from their office that actually handled the adjustment, and (5) will not otherwise mount any defense requiring the testimony of the Wisconsin police, GTI's Wisconsin employees, or any other member of AOI's Wisconsin staff. Unsurprisingly, AOI takes issue with GTI's narrow view of the facts in dispute, arguing "there are still significant issues in this case in terms of what inventory is actually missing, to whom that inventory belonged to, the value of the inventory, etc." (Doc. 14 at 6.) Additionally, it seems likely to the Court that testimony of AOI employees who handled the insurance claim will be relevant to whether the claim was delayed in bad faith and an examination of the damaged equipment may be relevant to the extent of GTI's damages. As such, the Court finds that the cost of litigation, the access to physical evidence, and the convenience of every other witness besides two GTI employees will be better served by litigating the dispute in Wisconsin.

### F. The Relevant Public Policy of Arizona

No relevant public policy of Arizona requires the Court to retain the case. Under *Jones*, the relevant public policy of the forum state is a significant factor in determining if transfer is merited. 211 F.3d at 499. For example, a state statute expressly reserving local jurisdiction over a cause of action can evidence a strong public policy "to provide a

protective local forum." *Id*.

GTI argues that Arizona has a strong public policy in protecting their insured citizens and in making sure parties "honor [their] obligations." (Doc. 10 at 9.) In support of this position, GTI cites to A.R.S. § 12-401(18) which allows local litigants to sue insurance companies "in any county in which the cause of action, or a part thereof, arose, or in the county in which defendant has an agent or representative, owns property or conducts any business." However, the statute cited by GTI is merely a list of all permissible venues where a party can be sued. Further, Arizona law explicitly allows an insurer to transfer venue in circumstances where convenience and justice require it. A.R.S. § 12-406 ("Grounds…for change of venue are… [t]hat the convenience of witnesses and the ends of justice would be promoted by the change.")   On the other hand, Wisconsin would have an interest in protecting property owners in its jurisdiction.  This factor is neural with respect to a transfer.

### G. Weighing all Factors

Weighing the above factors, the Court finds that transfer to the Eastern District of Wisconsin is merited. While Plaintiff's selection of an Arizona forum is entitled to weight, that selection is outweighed by the interests of convenience, fairness, and justice in this case. The claim underlying this case deals with a theft at the Plaintiff's Wisconsin property and a resulting insurance claim adjusted out of Defendant's Wisconsin claims office. The Plaintiff is a Wisconsin corporation, and the vast majority of witnesses and physical evidence relevant to this dispute is located in that forum. Both parties appear to have extensive case-related contacts with the Wisconsin forum and, as a matter of Arizona choice of law rules, the substantive law of Wisconsin applies to the suit. Plaintiff's choice of one of its home forums and the presence of two witnesses in Arizona cannot outweigh the factors that warrant the transfer.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Defendants' Motion to Transfer Venue to the Eastern

1 | District of Wisconsin, (Doc. 9), **is granted.** This case shall be transferred to the Eastern
2 | District of Wisconsin.

Dated this 7th day of January, 2021.

_____
Honorable Susan M. Brnovich
United States District Judge